UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/14
```

LAURENCE J. SKELLY & ELLEN BURKE,
individually and on behalf of all others similarly
situated,

                  Plaintiffs,

    -against-

INSURANCE SERVICES OFFICE INC. & THE
PENSION PLAN FOR INSURANCE
ORGANIZATIONS

                  Defendants.

-------------------------------------------------------------- X

**ORDER GRANTING MOTION
TO DISMISS**

12 Civ. 8889 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiffs bring this complaint, as a class action, under the Employee Retirement

Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs are

participants in the Pension Plan for Insurance Organizations (the "Plan"), an "employee pension

benefit plan" within the meaning of § 3(2)(A) and § 3(35) of ERISA. Defendant, Insurance

Services Office ("ISO") employed plaintiffs and contributed to the Plan as a sponsor. Plaintiffs

allege that a 2002 Amendment to the Plan that changed the calculation of pension benefits

prospectively violated ERISA. Because I find that plaintiffs' complaint is untimely and thus

barred by the statute of limitations, the complaint is dismissed.

## I.    **Factual Background**

        Before 2002, the Plan calculated pension benefits by multiplying a Plan

participant's years of employment by a percentage of the participant's "Average Annual

Compensation." The Average Annual Compensation was

> average of a Member's annual Compensation during the 60 consecutive month period out
> of the last 120 consecutive months of his or her Service in the Eligible Class in which

such average is the highest, the Plan shall disregard all months in which the Member had no Compensation.

§ 1.5 of the Plan. As part of its conversion from a non-profit to a for profit company in 2002, ISO amended the Plan. The 2002 Amendment, effective January 1, 2002, changed the formula for calculating benefits prospectively.[1] Participants' benefits before 2002 were still calculated as described above. After 2002, however, the benefits were calculated using a new formula. Any subsequent increase in participant's compensation after 2002 would not be used to calculate the "Average Annual Compensation" for benefits accrued before 2002 and these benefits were therefore "frozen."

As required by § 204(h) of ERISA, ISO provided all Plan participants notice of the 2002 Amendment on November 30, 2001. The notice informed participants of the change and explained how the new formula, the "cash balance formula," would calculate benefits for 2002 forward. The notice provided that

Effective January 1, 2002, ISO, an adopting employer-sponsor of the Benefits Connection Group Pension Plan (the "Plan"), will change the way that benefits are accrued under the Plan by converting from a traditional defined benefit formula to a cash balance formula. . .

The computation of benefits under the cash balance formula is different from the Plan's prior traditional defined benefit formula.

Under the old formula, your benefit was based on a specified percentage of your highest average compensation (for 60 consecutive months out of the last 120 consecutive months you worked) multiplied by your years of credited service. . .

Under the new cash balance formula, ISO will make a hypothetical contribution based on a percentage of your compensation to a hypothetical account at the end of each year. The pay credits increase based on the number of years of service you have at the end of any Plan year.

---

[1] The Plan allowed for amendments, providing that "any provision of this Plan may be amended by the Named Fiduciaries with respect to all Participating Employers. . ." § 8.1 of the Plan. Under § 8.2 of the Plan, "no amendment to the Plan . . . shall be effective to the extent that it has the effect of decreasing a Member's Accrued Benefit." The SPD also explained that while the employer "intends to continue the Plan indefinitely . . . your Employer reserves the right to modify or terminate this Plan. If the Plan is terminated, each member will receive their accrued pension as of the date of termination . . ." SPD at 14.

*See* Notice at 19. The notice also explained that the benefits accrued under the old formula prior

to 2002 would remain unchanged and unaffected by the new formula.

> [T]he conversion from a traditional defined benefit formula to a cash balance formula
> takes place on January 1, 2002, any accrued benefit up to December 31, 2001 will be
> determined using the traditional defined benefit formula.
>
> This means that participants who retire after 2001 (and are not covered by a special
> grandfather rule) receive a benefit based on the traditional defined benefit formula up
> through December 31, 2001 **plus** their accrued benefit under the cash balance formula for
> service from January 1, 2002 through their date of retirement.

*Id.* at 20. The § 204(h) notice also provided examples and hypotheticals showing participants

how the Amendment would work when applied to a participant's actual benefits or

compensation.

Participants also received notice of the 2002 Amendment in the post-amendment

Summary Plan Description ("SPD"). The "Fast Facts" section of the SPD explained that benefits

accrued before 2002 would still be calculated by "your age, service, and final average earnings

as of December 31, 2001 under the old formula" and would be frozen and added to any new

benefits accrued after 2002 upon retirement. *See* 2002 SPD at 3, 12-13. Employees' annual

benefits statement also clearly delineated the effect of the 2002 Amendment as it showed their

benefits and calculation before 2002 directly adjacent to the benefits calculated after 2002. This

chart made clear that the benefits prior to 2002 did not account for or include any subsequent

raise in compensation after 2002 but were instead frozen.

Plaintiffs Skelly and Burke allege, among other things, that the 2002 Amendment

violates ERISA because the Amendment is really an illegal cutback of accrued benefits. *See*

ERISA's anti-cutback provision, ERISA § 204(g); 29 U.S.C. § 1054(g). Plaintiffs were both

employed by ISO in 2002 and therefore received notice of the Amendment and its practical

3

import prior to the filing of this lawsuit on December 6, 2012. Because plaintiffs' claims are untimely for the reasons explained below, I need not reach the merits of their claims.

## II.    Discussion

This court has jurisdiction under 29 U.S.C. §§ 502(e)(1), 1132(e)(1) and 28 U.S.C. § 1131(a). To "survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain enough facts to state a claim to relief that is plausible on its face." *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 446 (S.D.N.Y. 2011). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In considering a motion to dismiss, the court may consider not only all the allegations in the complaint but also documents referenced in or central to the complaint, including pension benefits plan documents. *Faulkner v. Beer*, 463 F.3d 130, 134-35 (2d Cir. 2006).

To determine the timeliness of plaintiffs' claims I must first determine the applicable statute of limitations and then determine when the claims accrued. Because ERISA does not provide a statute of limitations, the most analogous limitations period is "borrowed" from state law. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983); *Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). New York's six-year limitations period for breach of contract claims under N.Y. C.P.L.R. § 213 normally governs ERISA breach of contract claims. *See, e.g., Hirt v. Equitable Retirement Plan*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006), *aff'd* 285 Fed. App'x 802 (2d Cir. July 9, 2008). When the claims are based on asserted violations of ERISA, such as the implementation of a cutback provision, however, courts in this district have applied the three-

4

year statute of limitations pursuant to N.Y. C.P.L.R. § 214. *See Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 533 (S.D.N.Y. 2012). Because plaintiffs' claims would be untimely under either statute of limitation, I need not determine which limitations period applies here.

Federal law determines when an ERISA claim accrues. "A plaintiff's ERISA cause of action accrues . . . when there has been a repudiation by the fiduciary [of the benefit] which is clear and made known to the beneficiaries." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593 (2d Cir. 1983). *See also Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007); *Hirt*, 450 F. Supp. 2d at 333. "Under federal common law, courts generally apply the 'discovery rule' to determine when an ERISA cause of action accrues, looking to when the plaintiff 'discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." [2] *Biello v. JPMorgan Chase Retirement Plan*, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009).

Here beginning in November 2001, plaintiffs had notice of the 2002 Amendment upon receipt of the § 204(h) notice document. Under the Second Circuit's discovery rule, if this notice was sufficiently clear and reasonably explained the practical import of the 2002 Amendment, the claims begin to accrue in November 2001. *Biello*, 607 F. Supp. 2d at 593 ("Discovering the injury – the illegal provisions that violate ERISA on their face – requires clear notice of those provisions."). Sufficient notice is provided when a plan participant "knows or should know he has a cause of action." *Miller v. Fortis Benefits*, 475 F.3d 516, 520-21 (3d Cir. 2007); *Winnett v. Caterpillar*, 609 F.3d 404, 409 (6th Cir. 2010); *Young v. General Motors Inv.*

---

[2] The Second Circuit held that ERISA claims seeking additional benefits based on Plan miscalculations of a benefits amount accrued when the plaintiff had "enough information to know or should know how his benefit was being calculated." *Novella v. Westchester County*, 661 F.3d 128, 147 (2d Cir. 2011). I need not determine whether *Novella* affects the Second Circuit's clear repudiation standard in these kinds of cases nor do I need to determine which standard should apply to this case because the notice provided by the Plan, the Memoranda, and the SPD is clear and sufficient under both standards.

*Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2009), aff'd 325 Fed. App'x 31 (2d Cir. 2009).

I find that plaintiffs received sufficient notice of the Amendment to the Plan beginning in November 2001. Plaintiffs were repeatedly informed of the 2002 Amendment, how it worked, and the effect it would have on their pre-2002 benefits, explaining that these benefits would still be calculated under the old formula thereby freezing these benefits as of December 31, 2001. This information is clearly provided in the §204(h) Notice provided to employees on November 30, 2001 and in the 2002 SPD. The § 204(h) Notice explained that the formula for accruing benefits "will change on January 1, 2002 . . . [and] the annuity provided under the current pension plan will be based on your years of service and eligible earnings through December 31, 2001, and fixed at that point." Notice at 12. They were also clearly informed of how the Amendment would work and the effect it would have on their benefits before and after 2002.

Plaintiffs argue that their claim did not begin accruing in 2002 because the notice they received was unclear and thus tantamount to never having received notice in the first place. They base this argument primarily on a footnote in the Retirement Benefit Statements that participants received that states an "Important Note: All benefit amounts shown in this statement are estimates. Actual benefits will be calculated at the time of your termination or retirement based upon all available employee information." Additionally, the "Benefit Statements" plaintiffs received contained the caveat that "if the calculations in this statement are inconsistent with actual plan provisions, the actual provisions will apply." Based on these statements, plaintiffs argue that they could not have actually known how their benefits were affected by the 2002 Amendment because the figures and computations in the documents were estimates only. It was not until, plaintiffs argue, they actually began receiving their benefits in 2012 that they

6

were fully informed and thus received notice of the impact and change effected by the 2002 Amendment to the Plan.

This argument is unavailing as it wholly ignores the actual information provided in the text of the § 204(h) notice and other documents that clearly lays out in plain English the terms of the Amendment.  They received multiple notices from the end of 2001 through 2003 that repeatedly informed them that their benefits under the old formula were frozen, and thus would be calculated using compensation as of December 31, 2001.  These notices included (1) descriptions of the 2002 Amendment and how it would impact calculation of benefits under the pre-2002 formula; (2) specific examples showing the calculation of benefits under the old formula using compensation frozen as of December 31, 2001, and (3) plaintiff's own personal benefit statements, which specifically showed the amount of their frozen accrued benefit under the old formula and that this benefit was not impacted by their post-amendment salary increases.

The information provided to plaintiffs was sufficient and sufficiently clear to provide notice of the 2002 Amendment such that the statute of limitations began to run in 2002. *See Hirt*, 450 F. Supp. 2d at 333 (holding that claim accrued when SPD informed participants that they were no longer grandfathered for pre-cash balance benefits); *Billelo*, 607 F. Supp. 2d at 593, 595-96 (holding that claim accrued when SPD notified participants that no minimum interest rate would be used for cash balance formula).  Having not filed this lawsuit until December 6, 2012, the complaint is untimely under either the three or six-year statute of limitations pursuant to New York law.

*Conclusion*

The § 204(h) notice provided in November 2001, the 2002 SPD, and the plaintiffs' annual benefits statements from 2002 forward provided ample, clear, and sufficient notice of the 2002 Amendment to the Plan.  Plaintiffs' claims concerning the 2002 Amendment

therefore began accruing in November 2001 and under either the three or six year statute of limitations applicable here, plaintiffs' claims are time barred. Defendants' motion to dismiss the complaint is granted.

The Clerk shall mark the motions (Doc. Nos. 38 & 43) terminated and the case closed.

SO ORDERED.

Dated:     September  1, 2014
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

8